This case raises the question of whether federal child pornography statutes that require a minimum of 15 years in prison on conviction can statutorily or constitutionally be applied to photographs that were taken within the context of a consensual legal relationship with a minor who was above the age of consent, where there was never any distribution or intent to discriminate against a minor. As argued in the briefs, the answer to both questions is no. Well, what would be your response to your client argues that his intimate relationship with J.B. was not illegal and thus entitled to privacy considerations? What's your response to the Supreme Court's opinion in Paroline v. United States which suggests that taking pornographic pictures of a minor raises different concerns from the minor's participation in sexual activity because of the possible dispersal of the pictures and their lasting effect? Well, I think that there's a couple of responses to that. First of all, I think there's a distinction between pornography and intimate photos. One is a commodity. One is meant to be distributed. It's intended to be distributed. An intimate photo, on the other hand, is something that isn't meant to be distributed and it's not fungible, so that a person who takes a photograph with their intimate partner has no greater likelihood of distributing that photo than they would of distributing a photo of their dog or a non-pornographic photo. So I think that's one of the issues. So we've had cases where individuals have taken intimate photos during the time when there was a relationship and then once the relationship ends, one of the parties to the relationship distributes the photos without the agreement of the other party. So just because there are photos taken during an intimate relationship doesn't preclude distribution at a subsequent time. And, Your Honor, there are prohibitions against non-consensual distribution of photos, whether for minors or adults, and those absolutely are constitutional. They absolutely should remain in place. Is distribution an issue here? No, there was no distribution in this case. These photos were, in fact, found on the minor's computer and they were also found on a camera, which the defendant's sister brought to the police. So they never were distributed anywhere. But that's the harm that the Supreme Court was articulating about why this is criminalized because of the danger of distribution at a future point. Well, Your Honor, I think that there are many items that are dangerous that we nonetheless allow people to possess, such as firearms and prescription drugs. Now, it's true that those could make it into the stream of commerce. They could be dangerous. Somebody could break into someone's home and steal a firearm. They could break into someone's home and steal prescription drugs. But we have prohibitions against that, and those are sufficient as both a deterrent and a punishment. But Congress has seen fit to prohibit the conduct that your client engaged in. Well, Your Honor, I don't believe that that's what the statute covers. And in looking at the statutory language, in particular focusing on the term use, the production statute requires that in order to be found guilty, the defendant has to employ, use, persuade, etc., a minor to engage in sexually explicit conduct. So in a consensual case, it really turns on the meaning of use. And this court has said in Overton that Section 2251 requires proof of active or coercive conduct by a defendant upon a minor. And that's a definition that squares with the Supreme Court's definition of the term use in Bailey. And in the context of a consensual case, it simply doesn't hold. Why isn't the difference in age between your client, who was in his 40s, I think, correct? That's correct. And J.B. at the time was 16. That's correct. Why isn't that enough to form an evidentiary basis for coercion? I don't think that it is without more. And the reason is that the state of Washington has decided that at 16, a minor is capable of making decisions about her own sexual relationships. Thirty-three other states have drawn the line at that same age of 16. In fact, the federal government, with respect to federal enclaves, has drawn that same line. So if a minor is old enough at that point to make her own decisions about whom she has a sexual relationship with, then a minor is also old enough to make decisions about whether to take these photographs. But you have to show a violation of the Commerce Clause, right? The federal government can still say that if you take a picture of someone under 18 that that's considered child pornography. But that doesn't hold, again, in consensual cases. It makes perfect sense in cases in which there is no relationship and there is no consent because those photos are fungible commodities. And they are either going to be distributed or they will impact the interstate market because they're replacing something that would be distributed. But when someone takes a photograph of a person they're in a relationship with, it's not fungible. If that photograph is destroyed, Mr. Larson is not going to seek out pictures of other 16-year-olds. So there is no commercial element. And that's what makes this case different than all of the other cases in which this court rejected Commerce Clause challenges. Doesn't the state of Washington have a statute dealing with the exploitation of minors that sets the age at 18? It does, Your Honor, but in Washington, unlike the interpretation that the federal government urges here, in Washington, the state courts have read in an element of non-consent. And that's demonstrated by the D.H. case, State v. D.H., which was cited in the briefs. In that case, we had the defendant who took explicit photos of several classmates, and the court dismissed charges where there was a finding that the minors had actually consented to the photographs. And in the appellate case, the appellate court also alluded to another incident in which this defendant had persuaded, or actually not persuaded, just asked his sister to disrobe for the camera. And again, the court said that would not rise to the level of sexual exploitation of a child. So Washington avoids all the constitutional problems by reading in an element of non-consent. Counsel, would you agree that the term youth is not defined in the statute? I would agree, Your Honor. The only definition we have is in the Overton case, and again, that is proof of active or coercive conduct by a defendant upon a minor. Right. So if it's not defined in the statute, how do you think we should define youth? Do you think we are stuck with the definition in the Overton case, or can we look at a dictionary definition? How do we define that word? Well, since Congress didn't define it, the standard would be that it should be given its ordinary or common use. The Supreme Court's obviously addressed the term youth in Bailey, and this court has addressed it as well in Overton. So I would urge the court to reaffirm its statement in Overton, even though that wasn't the issue in the Overton case. That is a definition that makes sense because it allows for consent as a defense instead of creating a strict liability offense, which is what the government is urging. What about the dictionary definition? Could we rely upon a dictionary definition of youth? Well, Your Honor, I think, as I put it on the briefs, the dictionaries tend to, again, use an element of active or coercive force, that it wouldn't be satisfied by simply picking up a camera where the person was consenting to the photograph being taken. Unfortunately, dictionaries vary in their definitions, and so I would urge the court to reaffirm its definition in the Overton case. That would avoid a strict liability statute. And one thing that I want the court to be mindful of is that creating a strict liability offense like the government is urging means that upwards of 30 percent of high school students are guilty of production of child pornography. Many young people would be guilty of production of child pornography, and that is a problem. That creates an overbreadth problem, and it creates problems with selective enforcement. Well, we don't have that. Did you raise the overbreadth issue here? Yes. Okay. But in terms of did you raise a facial challenge or is it applied to this particular? Both, Your Honor. It would be a facial challenge because an overbreadth problem presupposes that a statute covers too much constitutionally protected conduct. But that's a tough standard for you to meet, isn't it? Well, Your Honor, I think in this case it does apply because what we have is constitutionally protected conduct. But if it's a facial challenge. I thought you said it's a facial challenge, and now you're talking about this particular case. So on a facial challenge. Well, I think with an overbreadth challenge it necessarily presupposes that we're talking about more than just the defendant. However, as applied to his conduct, it is overbroad because it sweeps in constitutionally protected conduct, which is his private relationship with his girlfriend who is of legal age. Your Honor, there are other constitutional problems that are created if this court does not read an element of active or coercive force. One of the problems is that the statute would violate the Tenth Amendment. And this case, I want to stress, is an extreme outlier in terms of what the government usually prosecutes under 2251 and 2252. Unlike virtually every child pornography case for which there are reported decisions, we have a single subject who is 16 years old, above the state's age of consent, and who had in fact consented to the relationship and the photographs. She produced many of the photographs at issue herself. She uploaded them to her computer. She saved them until they were seized by law enforcement. There's no evidence of distribution, so we have a very rare case here, somewhat like the Bond case, where we have the government coming in and taking a statute that's aimed at a completely different kind of conduct and trying to shoehorn it into child pornography statutes. Bond is a little bit different, isn't it? I mean, that was under the umbrella of a treaty on chemical weapons, and the prosecution that was sought there was a disgruntled spouse who found out that her husband had impregnated a co-worker and put some chemical stuff on doorknobs in places where the paramour might encounter it. That's a little bit different. It's certainly different facts, but it's the same type of government action, which is to say the state of Washington is perfectly capable of sorting out whether a relationship is exploited or not. There's certainly no commerce element in this case. So the federal government took a statute that was aimed at the child pornography market. It was aimed at the production and commodification of exploited children. We have a bit of a problem with the Commerce Clause aspect. I mean, I understand your argument. You've stated it very well here and in your brief. But we have our Sullivan case, which is in the Supreme Court with a pending cert petition, which goes the other way, and we're bound by that unless the Supreme Court takes Sullivan and overrules it. Well, Your Honor, I think the Sullivan case, again, involves something different. When we have a non- It's the Commerce Clause challenge to this statute, isn't it? It is, but all of the Commerce Clause challenges have proceeded on this theory that just intrastate production of child pornography doesn't affect interstate commerce. And courts have uniformly said, no, it does affect interstate commerce because for the very reason that it's a fungible item, and that's different when you have a consensual photo because the person doesn't want a picture of any 16-year-old or any 14-year-old. The person wants a picture of the person they're in the relationship with, and that's why this case is different. And it's different because the government really doesn't prosecute these. We have only one case nationwide that is similar to this case, and it was in a different procedural posture. That was the Ortiz-Gorlau case. It involved a 14-year-old. It was Puerto Rico. So there are many differences between that case, but I've never seen a case like this in my years as being a federal defender. I never saw a case like this, and there's certainly no reported decisions that involve a consensual relationship with one minor who's above the age of consent. Counsel, could we go back to your over-breath argument for a minute? Would you agree that in order for you to prevail on that argument, we would have to characterize the activities in this case as speech? No, Your Honor. The abortion cases also deal with over-breath. So while most over-breath challenges involve the First Amendment, there are some that involve privacy, as in this case. What's the closest case that supports your argument that the statute in this case as applied to your client is overly broad? Do you have a specific case that you can cite on similar facts where there was a successful over-breath challenge? Well, again, Your Honor, I wish there were, but there are no similar fact cases to this one. The Ortiz-Rullao case is the only case involving a consensual relationship and the defendant didn't raise over-breath. Yeah. Child pornography, the Supreme Court has said that that's not entitled to protection of the First Amendment. Yes, and this is not a First Amendment challenge. This is a privacy challenge, which is to say, and the reason that people haven't raised the privacy challenge is that they haven't involved consensual relationships, and that's where this case differs from all of the others. If the Court has no further questions, I'd like to reserve the remaining five minutes for rebuttal. Thank you, Counsel. Thank you. Good morning, Your Honors. Helen Bruner on behalf of the United States. Counsel has characterized this as a consensual relationship, and it's certainly not my intent to suggest that the testimony at trial was that J.B. didn't agree to participate in the relationship. But I think that ignores the rest of the facts in this case, and this is, after all, as Counsel has indicated in the opening brief, an as-applied challenge constitutionally, and that's at page 20 of the opening brief. And those, as a result, I think the total facts in this case are what this Court must consider. So that includes the fact that what we are dealing with here is a somewhat troubled 16-year-old. She testified that she had originally thought that Mr. Larson was going to help her get her life turned around, but she also testified that he encouraged her to skip school to spend time with him, and he supplied her with drugs. He encouraged her to run away from home,  She stayed with him then in a variety of motels and at other people's residences, and then ultimately, as the Court found her to be credible, he took her to the police, told her to lie about her family. At the time when he spoke to the police, lied about their relationship. He denied that their relationship was sexual, and, in fact, to that extent, went so far as to say she wanted a sexual relationship, and he was rebuffing her in that at least until she was 18. So it is in that context that I think we look at the challenges here, and it is in that context, I think, that those challenges fail. Context is always important. This is also a case where Mr. Larson went to law enforcement, at least allegedly concerned that relatives of J.B. may have been prostituting her, correct? That is absolutely correct, Your Honor, and that's how the investigation of this started with the task force. And this is a use prosecution. The government's theory rises or falls on whether there was use within the meaning of the statute, correct? Absolutely. None of these images were found on his cell phone? They were not, but I would point out to the Court that the testimony at trial was that he had three cell phones and that the cell phone that  Maybe I can ask the question another way, and that was any cell phone attributed to Mr. Larson found with these images on it? The answer is no, isn't it? No, absolutely not. So we have a legally consensual relationship and apparent consent to the taking of the photographs, no distribution, correct? Not that we are aware of, no, Your Honor. No evidence in the record of distribution. And forgive a somewhat difficult question, was Maine Justice consulted about going forward with this prosecution? No, Your Honor, I don't know the answer to that. So as far as you know, the criminal division was not consulted? No. Okay. Could the statute be applied to, in the government's view of this, to two 17-year-old students at the University of Washington who were engaged in a consensual, intimate relationship, taking selfies of each other? Your Honor. Why don't you start with a yes or no? I believe that the language of the statute could so be applied, but I don't think that it would be applied. That's why I say context matters. It's asking the panel to rely upon the good nature of people who occupy prosecution offices. But you do agree it could be so applied? I believe so, yes, Your Honor. Doesn't that say something about its overbreadth? I don't believe so, because I think the use here, and what you're talking about is, and let me also say, Your Honor, before I answer that question, I don't believe, for example, that it could be used in a context where an individual took a selfie. That's different from the two individuals. I think it requires two individuals, in other words, someone, the minor, and someone else. Doesn't the evidence in this case suggest J.B. took some of these photographs? Absolutely, but the theory here was an aiding and abetting theory. To be a selfie, they have to do it together? No. What I'm saying is if she took pictures that were sexually explicit, as that term is defined in the statute, I don't believe the statute would cover that. And did she distribute any of these photos? She did in the sense of providing them to him. She testified to that. Other than that? Other than that, not that we're aware of. No evidence in the record. So the photographs were found, some of the photographs were found, exhibits five through nine were found on her computer, exhibits eight through, I believe it's 14, were found on the camera that was his camera. The argument we heard from the other side is that this court should read into a requirement into the use element of this statute, which is what this case involves, some element of coercion. Do you agree? I do not, Your Honor. I think the cases from the other circuits, the first, second, sixth, and eighth circuits that have analyzed it are correctly decided. The language of the statute includes employs, uses, persuades, and I believe entices, and then coerces. But we're here on use. Yes, but if you include coercion in the idea of use, you're effectively creating surplusage out of the term coercion. Tell us what you think the word use means. I think what the word use means is that a minor is in either a sex act or a lascivious pose is used in the sense of the photograph is taken of that individual, and it's a photograph that meets the definition of the statute. Well, the undertaking of a photograph in an intimate relationship that's legal under state law where there's been no distribution or any of the other terms in the statute is prosecutable because why? Because a minor was used, and in this case, the definition of minor is under 18, which is ironically also true for the state of Washington. So there is no difference between the two statutes. The state of Washington statute also includes employ. And while the defense would point to the juvenile prosecution case, I would point the course to the case that, pardon me. I have to look at the name. If both 17-year-olds took pictures, would they both be charged? I suppose they could. I have to say that it would be that broad. I don't think that anyone would prosecute that case, and that's why I keep coming back to context matters, and the over-breath challenge here was as applied. So I'm not suggesting for a moment that if I were standing here defending that, that you shouldn't have some concerns about over-breath, but that's not the case. Well, I suppose in the Bond case, there must have been somebody before it got to the U.S. Supreme Court saying, what in the world are you doing prosecuting someone for smearing some chemical substance on doorknobs and file cabinets and the like under the auspices of criminal statutes involving the chemical weapons test ban treaty. But those questions don't seem to have been asked here. Well, Your Honor, and nonetheless, the case did go forward. I do think, and I know I sound like – It's demise at the U.S. Supreme Court. Exactly. Your Honor, I guess let me, I guess, cut to the chase. I know that part of the difficulty here is if this were a statute where we weren't facing a 15-year mandatory minimum, my guess is it would not feel so. We wouldn't be looking at a range of conduct under the statute and be as concerned about whether that range of conduct fit. And I will fully acknowledge that. And I would certainly be more comfortable if we had a range of mandatory minimums that applied to the conduct. But nonetheless, I do think that the conduct does fit the statute and the reason for this prosecution, while not prosecuting the relationship between – simply the relationship between someone who is significantly older than the 16-year-old victim, but the entire context of the case, which is, I think, where I know I differ from counsel on that point. So the two 17-year-old students at the University of Washington I asked you about in the prior hypothetical, they're subject to prosecution. Whether an individual U.S. attorney or assistant U.S. attorney would presume to take it to a grand jury, they're capable of being prosecuted. I would have to say that, Your Honor. I mean, I don't think I can, based on the way the statute is written. In the statute, they're under 18. Yes. Okay. But I would also – I mean, I realize that the court in D.H. struggled to deal with that in the state system, but it also reads the same way. So whether – when you're faced someday with that, and I hope you are not faced with that case, which is not that case, perhaps we would read it differently. In terms of the one other – I guess the one other point is, with respect to the Tenth Amendment claim, obviously, the government's position is because it's the Tenth Amendment issue here. If the court has no other questions for me, I would ask the court to affirm. Appears not. Thank you, counsel. Thank you, Your Honors. I think as the prosecution conceded here, they are continuing to urge that the as long as they take a photograph of a minor. Counsel, isn't that what the court said in Bright and in the other circuits that have decided that? The Second Circuit, the Fourth Circuit, and the Eighth Circuit all said that the youth element is satisfied if a minor is photographed in order to create pornography. So how do you distinguish those cases? Well, Your Honor, those courts – this court is, of course, not bound by those decisions, but I believe it's either the Second Circuit case or the Wright decision in which the defendants actually raised the Overton case in support of their position, and those courts rejected Overton. So I think that demonstrates that this court is certainly not bound by that. But that interpretation obviously creates troubling precedents, which I think Your Honor pointed out. Even in Overton, there is a requirement of proof of active or coercive conduct. So it does not have to necessarily be coercive conduct if it's active. And that's correct, Your Honor, but active, again, implies some element of non-consent. How? How does active imply an element of non-consent? Well, in order to get a person to pose in a sexually explicit manner actively, there has to be some sort of overcoming of will. Why is that true, active as opposed to passive? Passive, I think, would be something like we have here where somebody is saying, hey, let's take photos. We look good together. Similar to, hey, let's go to lunch. I like talking to you. Those are not active. That's not active force. That's simply how about we make a mutual decision, which is what we have at issue here. Do you have a case that supports your argument as to what active means? Well, Your Honor, the only instance we have of this at Overton, and the court was actually dealing with a different issue, so didn't elaborate on it. And, of course, other courts who have been confronted with Overton and other circuits have said, we don't agree with the Ninth Circuit. What are we bound by? If the court in Overton wasn't really dealing with this issue and didn't elaborate, then what are we bound by in Overton under your view? Well, I think that Overton was dicta. I will concede that. However, I'm urging the court to reaffirm that language to avoid the constitutional problems that are created by the other circuits. And I think relying simply on prosecutorial discretion to avoid prosecuting University of Washington students or high school students is something that I think Mr. Yates and Ms. Bond would probably not urge any of us to do. Of course, that's not the case we have before us. The case we have before us is not the case of two 17-year-olds. We have a case of a 16-year-old and a 40-something-year-old man. So we don't have that particular case, and that's not something that we have to resolve today. We have to resolve the case of the 42-year-old or 45-year-old man who took pictures of a 16-year-old. Well, Your Honor, certainly no parent would be happy to find out that their 16-year-old is dating a 45-year-old. On the facts of this particular case, this 16-year-old was already a prostitute and a drug addict before she met Mr. Larson. Does that make it better or worse? I think I would say the same question because arguably that person is, I mean, everyone stomped on them. They're totally down and out without any sense of value. Your Honor, the other half of the sentence is that Mr. Larson himself was an emotionally troubled man. If the court read his 22-page letter to the court at sentencing, I think you can get a flavor for what his life was like and what sort of person he was. But there's no question that this is a relationship that nobody – Well, it's a bad idea to go to the police when you're in that, you know, delivering your head. Yes, and I think that shows his naivete as well as the 22-page letter. But I think that it's true that nobody likes the idea of a 16-year-old and a 45-year-old. However, state legislatures across the country have drawn the line at 16 and said that's old enough to make your own decisions, even if in retrospect those might be decisions that aren't advisable. So I think we have to look at it through that lens. But the problem is with interpreting the term use the way the government urges is that regardless of the age of the parties, we have a situation where there's a strict liability standard. And that's what's troubling about this case. The particular facts, the court found there was consent, found this was a love relationship, and unfortunately the record is somewhat thin as far as the they were lovers or friends or whatever is what the court said, and that there was no force or violence. And that's important in this case as well. All right. Thank you, counsel. Thank you, Your Honors. And I would urge the court to reverse Mr. Larson's convictions. Thank you to both counsel for your helpful arguments in this difficult case. The case just argued is submitted for decision by the court. We will be in recess for 10 minutes. All rise.
judges: Hawkins, Rawlinson, Callahan